[No. S026251. Dec. 2, 1993.]

PLATT PACIFIC, INC., et al., Plaintiffs and Appellants, v.
BRUCE D. ANDELSON et al., Defendants and Respondents.

308

**COUNSEL**

Joseph Liebman, Haight, Brown & Bonesteel, Roy G. Weatherup, Lori R. Behar, Thomas N. Charchut and Zeb Francoeur Gleason for Plaintiffs and Appellants.

Bruce D. Andelson, in pro. per., Weinstock & Feinberg and Irwin B. Feinberg for Defendants and Respondents.

**OPINION**

**KENNARD, J.**—May a party that did not demand arbitration within the time specified in an agreement to arbitrate nevertheless compel arbitration on the ground that it did not intend to relinquish the right to arbitrate the dispute when it failed to make a timely demand?

We conclude that, unless legally excused, a contracting party cannot compel arbitration when it has failed to make a timely demand, that the

absence of an intent to forego submission of a dispute to arbitration is not a legal excuse, and that in this case the failure to make a timely demand was not excused by waiver or estoppel based on the conduct of the other contracting party. We further conclude that in this case the time for making a demand to arbitrate was not changed by a subsequent modification of the agreement. We therefore affirm the judgment of the Court of Appeal.

I.

The facts material to a resolution of this case are undisputed. In May 1984, Platt Pacific, Inc., sued Bruce and Janice Andelson to recover funds allegedly owed it under a contract to construct a house and a garage. Mecca Properties, Ltd., a partnership, also sued the Andelsons to recover on a promissory note assigned to it by Platt Pacific, Inc., one of its general partners. Defendants answered both complaints, and cross-complained in both cases for, among other things, fraud and fraud in the inducement in relation to a purchase agreement by which the Andelsons acquired the property upon which the house and garage were to be constructed. By court order, the two actions were consolidated for all purposes. Trial was set for April 7, 1989.

In March 1989, the parties entered into an agreement for alternative resolution of their disputes. The agreement stated that the parties would dismiss their lawsuits without prejudice, that a voluntary settlement conference would be held before Judge Jerry Pacht (a retired judge of the Los Angeles County Superior Court) on July 6 and 7, 1989, and that the matter would be submitted to arbitration if the settlement efforts were unsuccessful.

In paragraph 2, subdivision (c) of the agreement, the parties agreed that (1) if Judge Pacht was unable or unwilling to conclude a settlement conference by July 31, 1989, a joint demand for arbitration would be filed with the American Arbitration Association no later than August 10, 1989, and (2) if any party failed to cooperate in the filing of a joint demand for arbitration, the failure to cooperate would be a breach of the agreement and the other party could file a demand for arbitration, *"but in no event shall such a demand be filed later than August 31, 1989."* (Italics added.) Paragraph 4 of the agreement stated: "In the event any party fails to abide by the terms set forth in this agreement, any other party may seek enforcement of this agreement by submitting this matter to the American Arbitration Association."

The agreement was drafted primarily by plaintiffs' attorney. The italicized words, *"but in no event . . . later than August 31, 1989,"* however, were added to subdivision (c) at the request of defendant Bruce Andelson. Andelson requested a "cut-off date so that this action would not drag on ad

infinitum and would finally be concluded after a long delay." Andelson also reminded plaintiffs' attorney, before the agreement was executed, of a previous telephone conversation in which Andelson informed plaintiffs' attorney that although the dates of July 6 and 7, 1989, selected for the voluntary settlement conference could remain in the agreement, the conference would most likely have to be rescheduled.

Thereafter, on May 12, 1989, plaintiffs' attorney asked Judge Pacht to schedule a settlement conference on July 6 and 7. On June 28, defendants' attorney telephoned plaintiffs' attorney and said that his client, Bruce Andelson, could not attend the scheduled settlement conference and that he would reset the settlement conference on dates that would be acceptable to all involved.

When some time thereafter plaintiffs' attorney tried to contact defendants' attorney, he was told that defendants' attorney was involved in several trials, but that after conclusion of these trials, the defense attorney would contact defendant Andelson to select new dates for the settlement conference. Consequently, plaintiffs' attorney did not attempt to reschedule the settlement conference; he also delayed filing a demand for arbitration because of the death on August 28, 1989, of Gilbert Platt, a principal of Platt Pacific, Inc. Because the decedent's wife, Blossom Platt, was an essential witness in the case, plaintiffs' attorney delayed filing a demand for arbitration to allow her to recover to some extent from her loss.

In October 1989, plaintiffs' attorney telephoned defendants' attorney to reschedule the settlement conference. When defendants' attorney did not return the telephone calls, plaintiffs' attorney notified him in writing of plaintiffs' intent to file a demand for arbitration.

On October 30, 1989, plaintiffs filed a demand for arbitration with the American Arbitration Association. In mid-1990, the association determined that the arbitration agreement was not self-executing, and that the association did not have authority to arbitrate the matter without a court order. Plaintiffs then petitioned the superior court to compel arbitration. In denying arbitration, the court stated that the arbitration agreement set forth a date (Aug. 31, 1989) by which arbitration had to be demanded, that plaintiffs had the right and ability to initiate arbitration within the specified time, and that plaintiffs had failed to timely seek arbitration.

The Court of Appeal affirmed the trial court's ruling. It held that plaintiffs had lost their contractual right to arbitration because they did not demand arbitration within the time set forth in the agreement; and the plaintiffs had

failed to establish that defendants were estopped from asserting plaintiffs' failure to timely demand arbitration, because the trial court could reasonably have concluded that defendants' conduct did not induce plaintiffs to refrain from filing such a demand.

## II.

The courts of this state have held that "where a contract provides that arbitration may be demanded within a stated time, failure to make demand within that time constitutes a waiver of the right to arbitrate." (*Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 483 [121 Cal.Rptr. 477, 535 P.2d 341]; accord, *Butchers Union* v. *Farmers Markets* (1977) 67 Cal.App.3d 905, 909 [136 Cal.Rptr. 894]; *Jordan* v. *Friedman* (1946) 72 Cal.App.2d 726, 727 [165 P.2d 28]; 3 Cal. Law Revision Com. Rep. (1961) p. G-36.)

In this case, plaintiffs contend the Court of Appeal erred in holding that a failure to demand arbitration by the date specified in an arbitration agreement is a "waiver" of the right to arbitrate. Plaintiffs assert that a determination of waiver requires an evaluation of (1) the state of mind of the party alleged to have waived arbitration, and (2) the extent of prejudice to the other contracting party. We disagree, as we shall discuss below.

### A.

Private arbitration is a matter of agreement between the parties and is governed by contract law. (See, e.g., *Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 8 [10 Cal.Rptr.2d 183, 832 P.2d 899]; *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 323 [197 Cal.Rptr. 581, 673 P.2d 251]; Code Civ. Proc., § 1280 et seq.) Under the law of contracts, parties may expressly agree that a right or duty is conditional upon the occurrence or nonoccurrence of an act or event. (See, e.g., Civ. Code, § 1434 et seq.; Rest.2d Contracts, § 224; 3A Corbin, Contracts (1960) § 631, p. 21; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 722, p. 654.) Thus, a condition precedent is either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises. (Civ. Code, § 1436; 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 722, p. 654.)

When, as here, the parties have agreed that a demand for arbitration must be made within a certain time, that demand is a condition precedent that must be performed before the contractual duty to submit the dispute to

arbitration arises. ■ The nonoccurrence of a condition precedent may be excused for a number of legally recognized reasons. But when a party has failed to fulfill a condition that was within its power to perform, it is not an excuse that the party did not thereby intend to surrender any rights under the agreement. (See 5 Williston, Contracts (3d ed. 1961) § 676, pp. 219-223.) A contrary conclusion would undermine the law of contracts by vesting in one contracting party the power to unilaterally convert the other contracting party's conditional obligation into an independent, unconditional obligation notwithstanding the terms of the agreement. ■ Thus, it is inconsistent with the law governing private arbitration agreements to assert, as plaintiffs do here, that the failure to satisfy the contractual requirement of making a timely demand for arbitration has no effect absent an intent to abandon submission of the dispute to arbitration.

Moreover, plaintiffs' assertion is contrary to the rule that the failure to timely demand arbitration is a "waiver" of the right to arbitrate. As we shall see, the term "waiver," as used in the context of the failure to timely demand arbitration, refers not to a voluntary relinquishment of a known right, but to the loss of a right based on a failure to perform an obligation.

### B.

As mentioned earlier, the courts of this state have held that the failure to make a timely demand for arbitration results in a "waiver"·of the right to compel arbitration. (See, e.g., *Freeman* v. *State Farm Mut. Auto. Ins. Co.*, *supra*, 14 Cal.3d at p. 483; *Butchers Union* v. *Farmers Markets*, *supra*, 67 Cal.App.3d at p. 909; *Jordan* v. *Friedman*, *supra*, 72 Cal.App.2d at p. 727.) It is true that, as plaintiffs point out, some decisions have defined the term "waiver" as the voluntary relinquishment of a known right. (See, e.g., *Henderson* v. *Drake* (1953) 42 Cal.2d 1, 5 [264 P.2d 921] [filing of document evidencing knowledge of entry of judgment not a waiver of statutory requirement of serving written notice of entry of judgment]; *BP Alaska Exploration, Inc.* v. *Superior Court* (1988) 199 Cal.App.3d 1240, 1252 [245 Cal.Rptr. 682] [concession by party at trial not a waiver of issue for purposes of appeal].) Contrary to plaintiffs' assertion, however, none of the cases concerning the failure to timely demand arbitration have used the word "waiver" to mean voluntary relinquishment of a known right.

Federal as well as state courts have used the term "waiver" to refer to a number of different concepts. (See *United States* v. *Olano* (1993) __ U.S. __ [123 L.Ed.2d 508, 519, 113 S.Ct. 1770, 1777] [distinguishing waiver as the intentional relinquishment of a known right from forfeiture as the failure to make a timely assertion of a right]; *Freytag* v. *Commissioner* (1991) 501

U.S. 868 [115 L.Ed.2d 764, 790, fn. 2, 111 S.Ct. 2631, 2647] (conc. opn. of Scalia, J.) [same]; see also 5 Williston, Contracts, *supra*, §§ 678, 679, pp. 238-258.) Generally, "waiver" denotes the voluntary relinquishment of a known right. But it can also mean the loss of an opportunity or a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to abandon or relinquish the right. (See, e.g., *People* v. *Visciotti* (1992) 2 Cal.4th 1, 79 [5 Cal.Rptr.2d 495, 825 P.2d 388] [defendant's failure to object at trial as a "waiver" of error]; *Minton* v. *Cavaney* (1961) 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473] [defendant's failure to allege statute of limitations as affirmative defense in answer to complaint constituted a "waiver" of the defense]; see Code Civ. Proc., § 1281.2, subd. (a) [court shall order arbitration unless right to compel arbitration has been "waived"].) The term "waiver" has also been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost. (See Annot., Delay in Asserting Contractual Right to Arbitration as Precluding Enforcement Thereof (1969) 25 A.L.R.3d 1171, 1176.)

The confusion engendered by the multiple meanings of "waiver" is not new. More than 30 years ago, Professor Williston observed: "In view of these different meanings of the word 'waiver' it is obviously futile to attempt to define the requirements of a valid waiver unless its use is first confined to some one or more of its ordinary applications wherein the requirements of the law are identical. Until that is done there will be constant confusion of expression." (5 Williston, Contracts, *supra*, § 679, at p. 257.)

We have examined the California decisions stating that a party may "waive" its right to arbitrate by failing to timely demand arbitration. We conclude that those decisions use the word "waiver" in the sense of the loss or forfeiture of a right resulting from failure to perform a required act. The leading case for the rule that arbitration must be demanded within the time agreed upon by the parties is a 1946 decision by the Court of Appeal in *Jordan* v. *Friedman*, *supra*, 72 Cal.App.2d 726. Significantly, a review of *Jordan* reveals that the court there did not use the term "waiver" in the sense of voluntary relinquishment of a known right.

In *Jordan*, a subcontractor sued a general contractor to foreclose a mechanic's lien. Relying on an arbitration clause in the subcontract, the general contractor filed a motion to stay the proceedings pending arbitration. The parties' subcontract required that a written demand for arbitration be filed with the architect no later than the time of final payment. The general contractor, however, made his demand for arbitration to the subcontractor rather than to the architect, and did so after the time for final payment had expired. The Court of Appeal held that, in failing to make a written

arbitration demand to the architect as required by the contract, and in not making the demand until three months after the contractually specified date, the general contractor was foreclosed from compelling arbitration. The court went on to state: "Where a contract provides that a demand for arbitration must be filed within a stated time and the party desiring arbitration permits the agreed period to pass without making demand, he *waives* his right to arbitration." (*Jordan* v. *Friedman, supra,* 72 Cal.App.2d at p. 727, italics added.) It cannot be said of the general contractor in *Jordan* that it intended to voluntarily relinquish its right to arbitration, for it had demanded arbitration both orally and in writing. Thus, the *Jordan* court's use of the term "waiver" in its holding was simply a shorthand way of stating that, by failing to perform certain acts specified in the parties' contract, the general contractor had lost the right to arbitration.

We now turn to the centerpiece of plaintiffs' argument. According to plaintiffs, the Court of Appeal's decision in *Napa Association of Public Employees* v. *County of Napa* (1979) 98 Cal.App.3d 263 [159 Cal.Rptr. 522] (hereafter *Napa Association*) supports their position that—contrary to the rule articulated in *Jordan* v. *Friedman, supra,* 72 Cal.App.2d 726—a party should be deemed to have waived the right to arbitrate only when there has been an intent by that party to relinquish that right, and there is prejudice to the opposing party. We undertake an analysis of *Napa Association* in the section that follows.

## III.

In *Napa Association, supra,* 98 Cal.App.3d 263, the Court of Appeal perceived two divergent lines of authority on what constitutes a waiver of the right to arbitrate: one line of cases holding that a party's failure to timely demand arbitration is a waiver of the right to compel arbitration, and another line of authority suggesting that the issue of waiver involves a consideration of the state of mind of the party seeking arbitration as well as a determination of prejudice to the party opposing arbitration. (*Id.* at pp. 268-270.) A close examination of those cases reveals, however, that, contrary to the view of the court in *Napa Association*, those decisions are not in conflict, but distinguishable, as we shall show.

*Napa Association* involved the timeliness of submitting a labor grievance, not a demand for arbitration. The memorandum of understanding between the employee association and the employer established a grievance procedure. The first step in that process was informal discussion between the aggrieved employee and the supervisor within 10 days of the occurrence of the matter on which the grievance was based. The memorandum also

provided that the grieving party could request arbitration within 10 days after receipt of the decision of the personnel director, the employer's highest level decisionmaker for employee grievances. Although the employee association failed to file a grievance within 10 days, it apparently did demand arbitration within the specified period. (*Napa Association, supra*, 98 Cal.App.3d at pp. 266-267.)

In holding that the failure to timely submit a labor grievance was not a "waiver" of the right to arbitrate in the absence of intentional relinquishment of the right or substantial prejudice, the court in *Napa Association* emphasized that its decision was limited to the grievance issue. As it pointed out: "What is involved here is not a contractual 'statute of limitations' with respect to the time within which *arbitration* must be demanded, but rather a time schedule with respect to the filing and processing of *grievances*." (98 Cal.App.3d at p. 270, original italics; see *State Farm Fire & Casualty Co.* v. *Superior Court* (1989) 210 Cal.App.3d 604, 612 [258 Cal.Rptr. 413]; see also *Lawrence* v. *Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565, 574 [251 Cal.Rptr. 319].) Therefore, there was no reason for the court in *Napa Association, supra*, 98 Cal.App.3d 263, to address the consequences of failing to make a timely demand for arbitration.

Nevertheless, the court in *Napa Association* went on to discuss, in dicta, what it considered to be two conflicting lines of cases on the question of whether a party's failure to demand arbitration within the contractually specified time resulted in a "waiver" of the right to arbitrate. First, the court analyzed a number of cases (e.g., *Freeman* v. *State Farm Mut. Auto. Ins. Co., supra*, 14 Cal.3d 473, and *Jordan* v. *Friedman, supra*, 72 Cal.App.2d 726) that had stated that failure to timely demand arbitration was a "waiver." In the court's view, none of those cases had held that a party's failure to invoke arbitration within the contractually specified period was an "automatic waiver." (*Napa Association, supra*, 98 Cal.App.3d at pp. 268-269.)

The *Napa Association* court then turned its attention to what it characterized as "another line of cases," *A. D. Hoppe Co.* v. *Fred Katz Constr. Co.* (1967) 249 Cal.App.2d 154 [57 Cal.Rptr. 95, 25 A.L.R.3d 1162] and *Martinez Typographical Union* v. *Silversun Corp.* (1967) 256 Cal.App.2d 255 [63 Cal.Rptr. 760], that suggested "waiver" is an issue involving consideration of both the state of mind of the party alleged to have relinquished the right to arbitrate and the extent of prejudice, if any, to the party opposing arbitration. (*Napa Association, supra*, 98 Cal.App.3d at p. 269.) According to the court, the approach articulated in those cases had been endorsed by us in *Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 188 [151 Cal.Rptr. 837, 588 P.2d 1261]. Unlike the court in *Napa Association*, we see no conflict between the two lines of cases.

The first line of cases cited in *Napa Association* (e.g., *Freeman v. State Farm Mut. Auto. Ins. Co.*, *supra*, 14 Cal.3d 473, and *Jordan v. Friedman*, *supra*, 72 Cal.App.2d 726) addresses the consequences of the failure to demand arbitration within the time stated in the arbitration agreement; that is the same issue we face here.

The second line of authority concerns issues other than the consequences of the failure to timely demand arbitration. Among these decisions are those involving arbitration agreements that require, expressly or by operation of law (Civ. Code, § 1657), that the demand for arbitration be made within a reasonable time. (See, e.g., *Martinez Typographical Union v. Silversun Corp.*, *supra*, 256 Cal.App.2d 255, 260, and *A. D. Hoppe Co. v. Fred Katz Constr. Co.*, *supra*, 249 Cal.App.2d 154, 161.) The determination of what constitutes a reasonable time depends on " 'the situation of the parties, the nature of the transaction, and the facts of the particular case.' " (*Spear v. California State Auto. Assn.* (1992) 2 Cal.4th 1035, 1043 [9 Cal.Rptr.2d 381, 831 P.2d 821], quoting *Sawday v. Vista Irrigation Dist.* (1966) 64 Cal.2d 833, 836 [52 Cal.Rptr. 1, 415 P.2d 816].) But deciding whether the demand for arbitration was timely is not the same as determining the consequences of an untimely demand.

Included in the second line of authority cited in *Napa Association*, *supra*, 98 Cal.App.3d 263, is our decision in *Doers v. Golden Gate Bridge etc. Dist.*, *supra*, 23 Cal.3d 180. *Doers* did not address the effect of a failure to timely demand arbitration or whether a demand had been timely made. The issue in *Doers* was whether a party's filing of a lawsuit in the face of an agreement to arbitrate was conduct so inconsistent with the exercise of the right to arbitration as to constitute an abandonment of that right. (*Id.* at p. 185; accord, *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 782-783 [191 Cal.Rptr. 8, 661 P.2d 1088]; *Keating v. Superior Court* (1982) 31 Cal.3d 584, 605-607 [183 Cal.Rptr. 360, 645 P.2d 1192].) This question—whether a party has abandoned its right to arbitration by conduct inconsistent with the exercise of the right—is altogether different from the question of whether a condition precedent to the contractual right to arbitrate has occurred or has been legally excused. Because these issues are so different, the reasoning of *Doers* is not helpful, much less authoritative, on the question we face here.

The court in *Napa Association*, *supra*, 98 Cal.App.3d 263, failed to distinguish cases in which the issue was either whether a demand for arbitration was timely made or whether conduct was so inconsistent with the exercise of the right to arbitrate that it constituted an abandonment of that right from cases involving the consequences of the failure to make a timely demand for arbitration. ■ Consistent with established law, we hold that,

in the absence of legal excuse, a party's failure to timely demand arbitration results in a contractual forfeiture of the right to compel arbitration.

▮ Here, the parties' written agreement required that the right to arbitration had to be invoked, if at all, by August 31, 1989. But plaintiffs did not demand arbitration until October 30, 1989. Therefore, they failed to satisfy the condition precedent to their right to arbitrate. Plaintiffs, however, maintain that the contractual condition specifying the time in which to demand arbitration was legally excused by defendants' conduct. In the section that follows, we shall consider the merits of this contention.

## IV.

▮ The performance of a condition may be legally excused on several different grounds. (See, e.g., Rest.2d, Contracts, *supra*, § 225, com. b, p. 166; 5 Williston, Contracts, *supra*, § 676, pp. 219-223.) When a condition is legally excused, the obligation of the other contracting party becomes unconditional and may be enforced. (See, e.g., Rest.2d, Contracts, *supra*, § 225, com. c, p. 167; 5 Williston, Contracts, *supra*, § 676, p. 223; 3A Corbin, Contracts, *supra*, § 752, p. 480.)

▮ Plaintiffs contend that defendants' representation to reschedule the voluntary settlement conference legally excused plaintiffs from performing the contractual condition that the right to arbitration had to be invoked by August 31, 1989. Plaintiffs maintain that defendants' promise to reschedule was a "waiver" of the condition in question, and that defendants are thus estopped from asserting plaintiffs' failure to satisfy the condition as a bar to arbitration. We disagree.

▮ Generally, the determination of either waiver or estoppel is a question of fact, and the trier of fact's finding is binding on the appellate court. (*Keating* v. *Superior Court*, *supra*, 31 Cal.3d at p. 605; *Sawday* v. *Vista Irrigation Dist.*, *supra*, 64 Cal.2d at p. 836; *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 266 [42 Cal.Rptr. 89, 398 P.2d 129].) When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling. (See, e.g., *Albers* v. *County of Los Angeles*, *supra*, 62 Cal.2d at p. 266; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 288, 289, pp. 300-302.)

▮ Here, the essential facts are undisputed, and the record does not support the conclusions that plaintiffs urge us to draw.

The facts in this case do not give rise to a reasonable inference that defendants had "waived" the contractual condition precedent that plaintiffs'

demand for arbitration be made within the specified time. Because defendants were not seeking to invoke arbitration, they had no duty to demand arbitration within the specified time. Therefore, defendants did not "waive" the condition in the sense of losing an opportunity or right by failing to do an act required under the contract.

Nor do the facts here compel the conclusion that defendants "waived" the condition in the sense of voluntarily relinquishing a known right. At most, the defense attorney agreed to reschedule the settlement conference. The telephone conversation between the parties' attorneys that involved the rescheduling of the settlement conference occurred more than two months before expiration of the time in which to demand arbitration under the agreement. Nothing in the record before us indicates that the telephone conversation concerned anything other than merely the rescheduling of the settlement conference; nothing was said about the condition in question. In addition, the statement by plaintiffs' attorney in his declaration that he deferred filing the demand for arbitration because of the death of Gilbert Platt, a principal of Platt Pacific, Inc., supports the trial court's conclusion that neither defendants nor their attorney induced the failure by plaintiffs to timely file their demand for arbitration.

■ We also reject plaintiffs' contention that as a matter of law defendants are estopped from asserting the plaintiffs' failure to satisfy the condition precedent that arbitration be demanded within the specified time as a bar to arbitration. Under the doctrine of equitable estoppel, a party is prevented from contradicting facts if, by conduct or representation, it has misled another to the latter's prejudice. (*Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249, fn. 7 [74 Cal.Rptr. 398, 449 P.2d 462]; 11 Witkin, Summary of Cal. Law, *supra*, Equity, § 177, pp. 858-860; see *Lusardi Construction Co.* v. *Aubry* (1992) 1 Cal.4th 976, 994 [4 Cal.Rptr.2d 837, 824 P.2d 643]; *Lentz* v. *McMahon* (1989) 49 Cal.3d 393, 399 [261 Cal.Rptr. 310, 777 P.2d 83].) Here, neither defendants nor their attorney misrepresented any facts. As we explained earlier, at most the defense attorney represented that he would attempt to reschedule the settlement conference. Contrary to plaintiffs' assertion, this conduct did not modify the provision in the parties' contract that any demand for arbitration be made within a specific period.

Parties to an agreement may change their obligations by modifying the terms of their contract. (1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 909, p. 814.) Under the doctrine of promissory estoppel, the promise by one party and the resulting detrimental reliance on that promise by another party operate as a substitute for consideration that may make the modification enforceable to the extent necessary to prevent injustice. (*Youngman* v.

*Nevada Irrigation Dist.*, *supra*, 70 Cal.2d at pp. 249-250.) Thus, a modification of the contract may be enforced when a party has made a promise that it should reasonably expect to induce action or forbearance on the part of the other party, and that does induce such action or forbearance. (Rest.2d Contracts, *supra*, § 90, p. 242; 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 248, pp. 249-251.) Here, the modification, if any, related to the rescheduling of the settlement conference, not the time in which to demand arbitration within the time specified in the parties' written agreement.

For the reasons set forth above, we conclude that the condition precedent (the making of a timely demand for arbitration) was neither legally excused nor changed by modification of the parties' written agreement on the issue of arbitration.

## V.

To summarize, a contractual requirement that a party's demand for arbitration must be made within a certain time is a condition precedent to the right to arbitration. In the absence of a legal excuse or subsequent modification of the parties' agreement, the failure to submit the dispute to arbitration within the agreed time precludes judicial enforcement of the right to arbitrate. In this case, plaintiffs' failure to timely demand arbitration was not legally excused, nor were the provisions of the contract governing the time for demanding arbitration modified.

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Panelli, J., Arabian, J., Baxter, J., and George, J., concurred.