Filed 6/20/14  Jacoby v. Islands Restaurants CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KATHRYN JACOBY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ISLANDS RESTAURANTS, L.P.,<br><br>Defendant and Appellant. | B250886<br><br>(Los Angeles County<br>Super. Ct. No. BC458426) |

APPEAL from an order of the Superior Court of Los Angeles County, Kenneth R. Freeman, Judge.  Affirmed.

Stuart Kane LLP, Bruce D. May and Eve A. Brackmann for Defendant and Appellant.

Capstone Law APC, Melissa Grant, Glenn A. Danas and Liana Carter for Plaintiff and Respondent.

# I.  INTRODUCTION

Defendant, Islands Restaurants, L.P., appeals from a June 28, 2013 order denying its motion to compel arbitration against plaintiff, Kathryn Jacoby.  Defendant was originally sued by Jonathan Chambless who withdrew from the case for personal reasons.  The trial court denied the motion to compel arbitration, finding defendant waived its right to arbitrate.  Because substantial evidence supports the trial court's waiver determination finding, we affirm the denial of defendant's motion to compel arbitration.

# II.  BACKGROUND

## A.  Class Action Complaint

On March 30, 2011, Mr. Chambless filed a class action complaint against defendant.  Mr. Chambless was employed as a server, a non-exempt hourly paid position, from May 2009 to December 2010 at defendant's Woodland Hills restaurant.  The complaint alleges defendant failed to compensate plaintiff and class members for:  unpaid rest period premiums; split-shift premiums; unpaid reporting time; failure to provide seating; and full reimbursement of business-related expenses and costs.  The complaint also alleges defendant failed to pay plaintiff and other class members all wages owed them upon discharge including rest period and split-shift premiums.  The complaint seeks civil penalties under the Private Attorneys General Act of 2004 for alleged Labor Code violations.  In addition, the complaint alleges violation of Business and Professions Code section 17200 et seq., because defendant's conduct constituted unlawful business acts and practices.

## B. Litigation With Mr. Chambless As The Proposed Class Representative

On May 4, 2011, defendant demurred and moved to strike the class action allegations in Mr. Chambless's complaint. Defendant argued the class action allegations in the first cause of action for violation of Labor Code section 226.7 for unpaid rest period premiums was barred by collateral estoppel principles. On October 21, 2011, the demurrer was overruled and the motion to strike the class action allegations was denied. On November 14, 2011, defendant filed an answer to the complaint. In the twenty-sixth affirmative defense, defendant asserts the claims were covered by the arbitration agreements signed by plaintiff and putative class members. On December 1, 2011, defendant filed a second motion to strike or dismiss the class allegations from the first cause of action for rest period violations based on collateral estoppel. On April 13, 2013, defendant's second motion to strike was denied. The trial court ruled plaintiff and putative members were not collaterally estopped from bringing a rest period class claim based on denial of class certification in another case filed in Orange County. On December 20, 2011, defendant filed a mandate petition challenging the trial court's order denying the motion to strike. We issued an order to show cause on March 29, 2012, and Mr. Chambless filed a response. On May 22, 2014, we issued the following order, "The order to show cause issued on March 29, 2012, is discharged, as being improvidently granted, and the petition for writ of mandate, filed December 20, 2011, is denied." (*Islands Restaurants, L.P. v. Superior Court* (May 22, 2012, B237974) [nonpub. order].) Defendant filed a review petition with our Supreme Court, which was denied on August 8, 2012. (*Islands Restaurants, L.P. v. Superior Court* (Aug. 8, 2012, S203031 [nonpub. order].) On January 18, 2013, Mr. Chambless filed his class certification motion. But Mr. Chambless later withdrew as the proposed class representative for personal reasons and was replaced by plaintiff.

3

## C.  Plaintiff Becomes The New Class Representative

On April 15, 2013, the parties stipulated to the filing of a first amended complaint. The first amended complaint replaces Mr. Chambless with plaintiff.  Thereupon, plaintiff is named as the proposed class representative.  The first amended complaint alleges defendant employed plaintiff from April 2009 to August 2012 as a server, a non-exempt hourly paid position, at its Woodland Hills restaurant.  The first amended complaint alleges defendant failed to pay rest period premiums and business expenses.  Plaintiff seeks recovery of civil penalties for the Labor Code violations under the Private Attorneys General Act.  In addition, plaintiff alleges defendant engaged in unlawful business acts and practices in violation of Business and Professions Code section 17200 et seq.  The first amended complaint does not allege any new causes of action.

## D.  Defendant's Motion to Compel Arbitration

After the first amended complaint was filed, defendant moved to compel arbitration of plaintiff's claims on May 10, 2013.  Defendant argued plaintiff was required to arbitrate her claims under the arbitration agreements she signed in 2009 and 2011.  In support of its motion, defendant submitted declarations from:  Warren Boone, defendant's director of human resources; Brian Agoncillo, an employee who trained new servers including plaintiff; and Jacob Jurado, an assistant manager.

Mr. Boone stated since 2003, defendant had offered arbitration agreements to all employees.  No employee was required to sign the arbitration agreement.  And every employee who signed an arbitration agreement could revoke his or her acceptance within 30 days of signing.  Mr. Boone stated plaintiff signed the 2009 and 2011 arbitration agreements.

Mr. Agoncillo, a trainer, conducted plaintiff's orientation and training on April 8, 2009.  He went over the arbitration agreement with plaintiff and gave her time to read it. Plaintiff executed the arbitration agreement and Mr. Agoncillo signed on defendant's

4

behalf on April 8, 2009. The 2009 agreement provides for arbitration of employment disputes including employment, compensation, unpaid wages, meal and rest periods, and overtime pay. The 2009 arbitration agreement states, "Any such employment dispute shall be submitted to binding arbitration pursuant to the Federal Arbitration Act using the rules for the resolution of employment disputes of the American Arbitration Association ('AAA') as then in effect." The 2009 arbitration does not contain a class action waiver.

Mr. Jurado was plaintiff's assistant manager at the Woodland Hills restaurant. In July 2011, Mr. Jurado was responsible for asking employees at the Woodland Hills restaurant to sign the new arbitration agreement. He met with plaintiff and told her about the new arbitration agreement. Mr. Jurado handed her a copy of the 2011 arbitration agreement and gave her time to read the document and ask questions. Plaintiff executed the 2011 arbitration agreement and Mr. Jurado signed on defendant's behalf on July 13, 2011.

The 2011 arbitration agreement provides for arbitration of all claims including claims for unpaid wages and penalties. The 2011 arbitration agreement is similar to the 2009 arbitration agreement with three differences. First, under the 2011 arbitration agreement, defendant agreed to pay all of the arbitrator's and arbitration expenses as required by law. Second, the 2011 arbitration contains a class action waiver, "I agree that in any dispute with [defendant], I will assert only my own individual claims, and will not assert any claims on behalf of any other person or class of persons." Third, the 2011 arbitration agreement states: "The Arbitrator shall follow the law. The Arbitrator . . . shall have no power to commit an error of law or legal reasoning, and . . . the award of the Arbitrator can be set aside on that [ground] upon review by a court of law." The 2011 arbitration agreement provides: "This constitutes the entire agreement between me and [defendant] with regard to arbitration. It supersedes all other agreements and understandings concerning arbitration, and it can be amended only in a written agreement signed by me and [defendant]." Under the 2011 arbitration agreement, plaintiff had 30 days after signing the agreement to revoke acceptance of it.

In opposition to defendant's motion, plaintiff argued the 2011 arbitration agreement was unenforceable because it was obtain by an improper communication with a putative class member. Plaintiff contended: defendant furnished the 2011 arbitration agreement during the pendency of a putative class action; the 2011 arbitration agreement superseded a prior arbitration agreement that had no class action waiver; coercion and undue influence rendered the 2011 arbitration agreement unenforceable; and defendant waived its right to arbitrate notwithstanding the change in class representative. Both Mr. Chambless and plaintiff signed the 2009 agreement to arbitrate but defendant did not move to compel arbitration during two years of litigation.

Plaintiff submitted a declaration in support of her opposition to the motion to compel arbitration. Plaintiff stated she worked at defendant's Woodland Hills restaurant from April 2009 to August 2012. She was paid minimum wage, $8.00 per hour, during the entire time she worked for defendant. Plaintiff stated she was given documents and told to complete all the forms including the 2009 arbitration agreement. She did not think she could change or dispute any of the forms. Plaintiff was not told by defendant that she was entitled to take a 10-minute rest break. In March 2013, she agreed to represent the putative class after she learned Mr. Chambless had to drop out of the suit for personal reasons. Plaintiff is currently a student and working in a low-wage job. If plaintiff had to pay her lawyers on an hourly basis, she would be unable to file a suit to recover wages for missed rest breaks.

Plaintiff also submitted a declaration from her attorney, Arnab Banerjee. In November 2012, Mr. Banerjee reached an agreement with defendant's counsel on a class certification briefing schedule. Based on the parties' stipulation and the court's order, plaintiff filed a motion for class certification on January 18, 2013. Defendant was to file an opposition to the class certification motion by February 18, 2013. A few days after the motion was filed, Mr. Chambless withdrew from the case for personal reasons. In March 2013, plaintiff agreed to represent the class.

Mr. Banerjee stated plaintiff obtained the names and contact information of 13,000 putative class members from defendant as part of class-wide discovery. To prepare for

6

the class certification motion, Mr. Banerjee interviewed hundreds of class members. In addition, Mr. Banerjee took the deposition of Ray Nosse, an employee of defendant, on multiple occasions. Mr. Nosse was designated by defendant as the employee most qualified to testify on its behalf. (Code Civ. Proc., § 2025.230.) Mr. Banerjee reviewed voluminous documents produced by defendant including a May 17, 2009 arbitration agreement signed by Mr. Chambless. A copy of Mr. Chambless's 2009 arbitration agreement with defendant was attached to Mr. Banerjee's declaration.

Mr. Banerjee stated he did not generally accept *individual* wage and hour clients. He explained the cases tend to be expensive to investigate and prosecute and the costs often exceeded the potential recovery. For example, plaintiff would recover at most $6,880 in rest period premiums if she were successful on her unpaid rest period claim. Mr. Banerjee estimated it would cost $14,950 for plaintiff to pursue her claims in arbitration even if defendant paid the arbitration costs.

### E. Trial Court's Ruling

On June 25, 2013, the hearing was conducted on defendant's motion to compel arbitration. On June 28, 2013, the trial court denied the motion. The trial court found the 2011 arbitration agreement was unenforceable because it constituted an improper communication with the putative class. However, the trial court ruled there was an agreement to arbitrate under the 2009 arbitration agreement. The 2011 arbitration agreement did not supersede the 2009 arbitration agreement because the updated arbitration agreement was unenforceable. But the trial court ruled defendant waived its right to arbitrate under the 2009 arbitration agreement. The trial court found defendant's actions were inconsistent with any intent to seek arbitration. Defendant filed: a demurrer; two motions to strike; a mandate petition; and a review petition in our Supreme Court. In addition, the parties engaged in class-wide discovery and agreed to a class certification motion briefing schedule. The case was over two years old and there was a pending class certification motion at the time defendant filed its motion to compel

7

arbitration. The trial court rejected defendant's contention that plaintiff's substitution as class representative in April 2013 "reset the clock for purposes of waiver" jurisprudence. Plaintiff was a putative class member in the case since its inception. Moreover, both plaintiff and Mr. Chambless signed the same 2009 arbitration agreement but defendant did not move for arbitration until now. The trial court concluded a finding that no waiver had occurred would result in extreme prejudice to the class.

## III.  DISCUSSION

### A.  Standard Of Review

We review the trial court's arbitration waiver finding for substantial evidence. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 ["Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by substantial evidence, is binding on the appellate court."] (*St. Agnes*); *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 983; *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319; *Hong v. CJ CGV America Holdings, Inc.* (2013) 222 Cal.App.4th 240, 248.) However, when the facts are undisputed and only one inference may be reasonably drawn, the issue is one of law and we review de novo. (*St. Agnes, supra,* 31 Cal.4th at p. 1196; *Platt Pacific, Inc. v. Andelson, supra,* 6 Cal.4th at p. 319.)

### B.  Waiver Of Arbitration

Code of Civil Procedure section 1281.2, subdivision (a) provides in pertinent part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it

8

determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for the revocation of the agreement . . . . " Under both the Federal Arbitration Act and state law, "waivers are not to be lightly inferred and a party seeking to establish a waiver has a heavy burden of proof." (*St. Agnes, supra,* 31 Cal.4th at p. 1195; *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 782.) Thus, any doubts concerning waiver should be resolved in favor of arbitration. (*St. Agnes, supra,* 31 Cal.4th at p. 1195; see *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24-25.)

In *St. Agnes*, our Supreme Court adopted a multi-factor test for determining whether a party has waived the right to arbitrate: "'In determining waiver, a court can consider "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party."'" (*St. Agnes, supra,* 31 Cal.4th at p. 1196, quoting *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992; see also *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30-31.)

Under both federal and state law, whether litigation results in prejudice to the party opposing arbitration is critical in waiver determinations. (*St. Agnes, supra,* 31 Cal.4th at p. 1203; *Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 340; *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 16.) Our Supreme Court explained: "Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses. [Citations.] [¶] Rather, courts assess prejudice with the recognition that California's arbitration statutes reflect "'a strong public policy in favor of

9

arbitration as a speedy and relatively inexpensive means of dispute resolution'" and are intended to "'encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.'" [Citation.] Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration. [¶] For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence [citation]." (*St. Agnes, supra,* 31 Cal.4th at pp. 1203-1204; see *Augusta v. Keehn & Associates*, *supra,* 193 Cal.App.4th at p. 340.)

Substantial evidence supports the trial court's waiver finding. Mr. Chambless's complaint was filed March 30, 2011. Both Mr. Chambless and plaintiff signed the 2009 arbitration agreement. That agreement provided for arbitration of all employment disputes including compensation, unpaid wages, and meal and rest periods. But defendant waited more than two years before it moved to compel arbitration on May 10, 2013. A party's unreasonable delay in demanding arbitration, in and of itself, may constitute a waiver of the right to arbitrate. (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 444; *Burton v. Cruise* (2010) 190 Cal.App.4th 939, 945.) A party must still demand arbitration within a reasonable time even if the arbitration agreement does not specify a time limit for demanding such. (*Wagner Construction Co. v. Pacific Mechanical Corp.*, *supra,* 41 Cal.4th at p. 30; *Burton v. Cruise, supra,* 190 Cal.App.4th at p. 945.) Our Supreme Court explained: "'[W]hat constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case.' [Citation.]" (*Wagner Construction Co. v. Pacific Mechanical Corp.*, *supra,* 41 Cal.4th at p. 30; *Burton v. Cruise, supra,* 190 Cal.App.4th at p. 945.) The trial court could reasonably rule the two-year delay here was

unreasonable. Courts have found shorter delays to be unreasonable and justification for a waiver finding. (*Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at p. 444 [nearly five-month delay was unreasonable]; *Augusta v. Keehn & Associates, supra,* 193 Cal.App.4th at p. 338 [six and one-half month delay was unreasonable]; *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1446, 1449, 1451-1452 [six-month delay supported waiver]; *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 556 [less than four-month delay supported waiver]; *Sobremonte v. Superior Court, supra,* 61 Cal.App.4th at p. 996 [10-month delay unreasonable]; *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1228-1229 [five and one-half month delay constituted waiver].).

In addition, defendant's conduct was inconsistent with an intent to arbitrate the claims and plaintiff has been prejudiced by the delay. Defendant did not demand arbitration until after it had substantially invoked "the litigation machinery" by filing: a demurrer and motion to strike the class allegations; a second motion to strike or dismiss the class allegations; a mandate petition with us; and a review petition in our Supreme Court. In addition, defendant participated in class discovery by producing numerous documents including the contact information of over 13,000 putative class members. Defendant also defended the deposition of its corporate designee on multiple occasions. Furthermore, defendant agreed to a class certification motion briefing schedule. The briefing schedule called on plaintiff to file a class certification motion on January 18, 2013. Defendant did not move to compel arbitration until three months after plaintiff had filed the class certification motion.

Defendant argues plaintiff failed to show she was prejudiced by defendant's failure to seek arbitration against Mr. Chambless. We disagree. Plaintiff has been a putative class member since the inception of the case. In addition, defendant stipulated to the filing of the first amended complaint, replacing Mr. Chambless with plaintiff as the class representative. Defendant's unreasonable delay in moving to compel arbitration prejudiced plaintiff and the putative class members. Defendant's conduct substantially undermines the public policy of favoring ""arbitration as a speedy and relatively

11

inexpensive means"""" of resolving disputes. (*St. Agnes, supra,* 31 Cal.4th at p. 1203; *Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at p. 444.)

Also, defendant contends the intervening change in the law weighs against waiver. Defendant argues there was uncertainty concerning whether *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 463-464 (*Gentry*) was preempted by the Federal Arbitration Act. This purported uncertainty arose after the United States Supreme Court decided *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. __, ___ [131 S.Ct. 1740, 1747-1753] (*AT&T Mobility*). Defendant asserts it would have been futile to seek arbitration in light of our decision in *Brown v. Ralphs Grocery Company* (2011) 197 Cal.App.4th 489, 503 (*Brown*). In *Brown,* we held the Private Attorneys General Act waiver provision in the parties' arbitration agreement was invalid. (*Id.* at pp. 503-504.) But we did not decide whether *Gentry* was preempted by the Federal Arbitration Act in light of *AT&T Mobility*. (*Brown, supra,* 197 Cal.App.4th at p. 498.) We did not do so because plaintiff failed to establish the four factors required under *Gentry, supra,* 42 Cal.4th at page 463. (*Brown, supra*, 197 Cal.App.4th at pp. 496-497.)

And it bears emphasis *Gentry* did not invalidate all class action waivers in arbitration agreements. In *Gentry*, our Supreme Court expressly held that not all class arbitration waivers in overtime cases are unenforceable: "Nonetheless, when it is alleged that an employer has systematically denied proper overtime pay to a class of employees and a class action is requested notwithstanding an arbitration agreement that contains a class arbitration waiver, the trial court must consider the factors discussed above: the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' rights to overtime pay through individual arbitration. If it concludes, based on these factors, that a class arbitration is likely to be a significantly more effective means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for employees alleged to be affected by the employer's violations, it must

12

invalidate the class arbitration waiver to ensure that these employees can 'vindicate [their] unwaivable rights in an arbitration forum.' [Citation.]" (*Gentry, supra,* 42 Cal.4th at p. 463; see *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1165.) Further, *Brown* was limited to a Private Attorneys General Act claim. The first amended complaint contains an additional unfair competition claim. Finally, we are engaging in deferential substantial evidence review. The lack of certitude about *Gentry* does not establish, as a matter of law, an absence of prejudice on plaintiff's part resulting from the aforementioned delays.

There is substantial evidence defendant waived its right arbitrate under the 2009 arbitration agreement which was signed by both Mr. Chambless and plaintiff. Thus, the order under review must be upheld on that ground. We need not discuss whether the 2011 arbitration agreement was an impermissible class communication and thus unenforceable.

## IV. DISPOSITION

The June 28, 2013 order denying the motion to compel arbitration is affirmed. Plaintiff, Kathryn Jacoby, shall recover her costs on appeal from defendant, Islands Restaurants, L.P.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

KRIEGLER, J.                              MINK, J.[*]

---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13